1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAUER BROS. LLC, a California limited liability company, | CASE NO. 09cv500-WQH-BGS |
| Plaintiff, | ORDER |
| vs. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendant. | |
| NIKE, INC., an Oregon Corporation, | |
| Counterclaimant, | |
| vs. | |
| BAUER BROS. LLC, a California limited liability company, | |
| Counterdefendant. | |

HAYES, Judge:

The matters before the Court are the Motion for Summary Judgment filed by Defendant Nike Inc. ("Nike") (ECF No. 109), and the Motion for Summary Judgment on Nike's Counterclaims (ECF No. 112), Motion for Summary Judgment on Nike's Affirmative Defenses (ECF No. 113), and Motion to Amend Trademark Registrations (ECF No. 107) filed by Plaintiff Bauer Bros. LLC ("Bauer").

**BACKGROUND**

On March 12, 2009, Bauer initiated this action by filing a Complaint against Nike. (ECF No. 1).  Bauer alleges that it is the owner of registered trademarks for "Don't Tread on Me" and "DTOM" on apparel.  Bauer alleges that Nike sold apparel bearing these trademarks without Bauer's authorization.  In the Complaint, Bauer asserts three causes of action against Nike:  (1) unfair competition pursuant to the Lanham Act (15 U.S.C. § 1125); (2) unfair competition pursuant to California law (Cal. Bus. & Prof. Code § 17200); and (3) common law trademark infringement.

On April 3, 2009, Nike filed an Answer and Counterclaims.  (ECF No. 4).  On October 8, 2010, Nike filed Amended Counterclaims seeking cancellation of the "Don't Tread on Me" and "DTOM" trademarks pursuant to 15 U.S.C. §§ 1064 and 1119.  Nike alleges that Bauer's trademark registrations were obtained from the U.S. Patent and Trademark Office ("USPTO") through fraud.  (ECF No. 43).  On November 8, 2010, Nike filed an Amended Answer asserting affirmative defenses.  (ECF No. 54).

On September 14, 2011, Bauer filed a Motion to Voluntarily Amend Trademark Registrations, requesting that the Court issue an Order to amend the description of goods in the "Don't Tread on Me" and "DTOM" trademark registrations.  (ECF No. 107).  On October 11, 2011, Nike filed a response.  (ECF No. 126).

On September 16, 2011, Nike filed a Motion for Summary Judgment.  (ECF No. 109). On October 11, 2011, Bauer filed an opposition (ECF No. 131), including the declarations of Luke Bauer (ECF No. 132)[1] and Darren Quinn (ECF Nos. 133-134).  On October 19, 2011, Nike filed a reply (ECF No. 146), including objections to the declarations submitted by Bauer (ECF Nos. 141, 142).  On March 16, 2012, Nike filed supplemental briefing in support of its motion.  (ECF No. 169).  On March 23, 2012, Bauer filed a response.  (ECF No. 172).

---

[1]The declaration of Luke Bauer attached the photograph of a silkscreen and included statements suggesting that the silkscreen was used to produce trademarked t-shirts in October 2005.  On February 29, 2012, this evidence was excluded from the record by the Magistrate Judge for discovery violations under Federal Rule of Civil Procedure 37.  *See* ECF No. 163; affirmed at ECF No. 174.

On September 16, 2011, Bauer filed a Motion for Summary Judgment on Nike's Counterclaims (ECF No. 112) and a Motion for Summary Judgment as to Certain Affirmative Defenses (ECF No. 113), including the declarations of Luke Bauer (ECF No. 114) and Darren Quinn (ECF Nos. 115-116). On October 11, 2011, Nike filed oppositions (ECF Nos. 127, 128) as well as objections (ECF Nos. 129, 130). On October 18, 2011, Bauer filed replies. (ECF Nos. 139, 140). On March 16, 2012, Bauer filed supplemental briefing in support of its motions. (ECF Nos. 167, 168). On March 23, 2012, Nike filed a response. (ECF No. 171).

On October 28, 2011, the court heard oral arguments. (ECF No. 149).

## UNDISPUTED FACTS

### "Don't Tread On Me" Trademark Application and Registration

Bauer Bros. LLC ("Bauer") is a clothing company run by Tim Bauer and Luke Bauer. On April 9, 2004, Bauer filed a trademark application for use of the phrase "Don't Tread On Me." (Trademark App. No. 78,399,375; Luke Bauer Decl., Ex. A; ECF No. 132-1). The application stated a "first use in commerce date" of March 11, 2004 for over a hundred items of apparel including shirts, ski bibs, suspenders, camisoles, leotards, and galoshes. *Id.* Luke Bauer signed the application on behalf of Bauer, declaring "that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true." *Id.* On June 7, 2005, the USPTO registered the trademark "Don't Tread On Me" to Bauer. (Trademark Reg. No. 2,959,755; Luke Bauer Decl., Ex. B; ECF No. 132-2).

At the time he filed the trademark application for "Don't Tread On Me," a number of the items of apparel listed in the application were not being used by Bauer in commerce. (Luke Bauer Depo. 258:4-14; ECF No. 111-3 at 134) ("Q: And you came up with the description of goods that's shown on the second page, right? A: Yes.... Q: You were not in fact using Don't Tread on Me at the time you filed this on a number of these items. Is that fair to say? A: Yes."). On December 27, 2010, Bauer filed a Declaration of Use and/or Excusable Nonuse of Mark in Commerce with the USPTO regarding the "Don't Tread On Me" trademark, declaring that "this filing does **NOT** cover the following goods or services ... and these goods or services are to be permanently **deleted** from the registration: [the 114 items of

1  apparel listed in the original trademark application and registration]." (ECF No. 127-1 at 27)

2  (emphasis in original).  Bauer declared that "The mark is in use in commerce on or in

3  connection with the following goods or services.... Apparel, namely t-shirts."  *Id.*  Bauer

4  amended the "Don't Tread On Me" trademark with the USPTO to only cover t-shirts, instead

5  of the 114 items originally listed in the application and registration.

6                    **"DTOM" Trademark Application and Registration**

7         On January 17, 2006, Bauer filed a trademark application for the phrase "DTOM" (an

8  abbreviation of "Don't Tread On Me").  (Trademark App. No. 78,792,628; Luke Bauer Decl.,

9  Ex. C; ECF No. 132-3).  The application stated a "first use in commerce date" of March 11,

10  2004 for over a hundred items of apparel, identical to the items of apparel listed in the "Don't

11  Tread On Me" application.  *Id.*  Luke Bauer signed the application on behalf of Bauer,

12  declaring "that all statements made of his/her own knowledge are true; and that all statements

13  made on information and belief are believed to be true."  *Id.*  On November 14, 2006, the

14  USPTO registered the trademark for "DTOM" to Bauer.  (Trademark Reg. No. 3,171,585;

15  Luke Bauer Decl., Ex. D; ECF No. 132-4).

16         At the time Bauer filed the trademark application for "DTOM," a number of the items

17  of apparel listed in the application were not being used by Bauer in commerce. (Luke Bauer

18  Depo. 280:20-281:4; ECF No. 127-6 at 185-86) ("Q: Okay. And the registration, like the Don't

19  Tread On Me registration, covers many dozens of items of apparel. Is that correct? A: Yes, that

20  is correct. Q: And this identification of goods in the DTOM registration is incorrect; right? A:

21  Yes.").

22         At his deposition on April 6, 2011, Luke Bauer testified, "I obviously didn't know

23  goods and services was something that was so technical. I thought I was doing it right.... I

24  thought that I should list all the apparel for better protection.... From my point of view, I just

25  thought apparel was apparel. And so I thought that was all included with 'apparel.'" (Luke

26  Bauer Depo. 254:17-22, 263:16-18; ECF No. 115-12 at 1, 3). Luke Bauer testified that he filed

27  trademark applications because "they're all something that I valued and something that I

28  wanted to pursue."  (*Id.* at 253:20-21; ECF No. 127-6 at 79).  Luke Bauer stated that "[t]he

1   trademark process, it gets you protection so you can develop a brand and then work from

2   creating T-shirts to actually going on to making hats and jeans and all of these awesome things

3   that you can be very proud of." (*Id.* at 253:20-21; ECF No. 127-6 at 80.)

4          In a declaration dated September 16, 2011, Luke Bauer stated that "[o]n April 9, 2004,

5   on which date I filed Bauer's trademark application for 'DON'T TREAD ON ME,' Bauer was

6   only using its 'DON'T TREAD ON ME' trademark on t-shirts... [and o]n January 17, 2006, on

7   which date I filed Bauer's trademark application for 'DTOM,' Bauer was only using its

8   'DTOM' trademark on t-shirts." (Luke Bauer Decl. ¶¶ 17-18; ECF No. 114 at 3).  Luke Bauer

9   stated that, "[a]t the time I submitted the Applications, I did not know that the Applications

10  contained any statement that was false or that the PTO would interpret to be false.... I did not

11  intend to deceive the PTO in any way... [and] I did not make any knowing misrepresentation

12  to the PTO in connection with the Applications."  (Luke Bauer Decl. ¶¶ 27, 28, 30; ECF No.

13  114 at 5).

14          **Nike's Evidence Regarding First Use of the Trademarks in Commerce**

15          Nike submitted itemized sales records which show that the first sale of Nike apparel

16  bearing the phrase "Don't Tread on Me" occurred in December 2005 and that the first sale of

17  Nike apparel bearing the phrase "DTOM" occurred in March 2006.  (ECF No. 144 at 6-8).

18  Nike submitted the deposition testimony of Nike's advertising manager who states that he

19  began working on Nike's "Don't Tread on Me" advertising campaign for the U.S. Men's

20  National Soccer Team in May 2005, and that the campaign was launched to the public in

21  October 2005. (ECF No. 111-2 at 12).  Nike submitted internal communications dated August

22  and December 2005 specifically regarding the campaign and referencing existing sale orders

23  and anticipated retail locations for the sale of "Don't Tread on Me" t-shirts and apparel.  (ECF

24  No. 111-4 at 70-71, 111-6 at 8).  Nike has submitted samples of apparel bearing the phrase

25  "Don't Tread On Me" and "DTOM" that were sold in commerce in conjunction with the

26  "Don't Tread on Me" advertising campaign.  (ECF No. 119).

27          Nike submitted the deposition testimony and expert report of a trademark consultant

28  who investigated Bauer's use of the "Don't Tread on Me" trademark in early November 2005.

(ECF No. 111-3 at 51-72; 118 at 36-40).  The consultant stated that he conducted research and communicated directly with Tim and Luke Bauer between November 2005 and January 2006 regarding Bauer's use of the "Don't Tread On Me" trademark.  (ECF No. 11-3 at 51-72).  The consultant's investigation lead him to the conclusion that Bauer was not using the "Don't Tread on Me" trademark in commerce at that time.  *Id.*

**Bauer's Evidence Regarding First Use of the Trademarks in Commerce**

Bauer submitted a sales receipt reflecting a $7.40 "stamp purchase" from US Bank dated March 9, 2004.  (Luke Bauer Decl. Ex E; ECF No. 132-5).  In his deposition testimony, Luke Bauer states:

> Q And what process would you go through, Mr. Bauer, to find some receipts or other documentation that show when you first used 'Don't Tread on Me' in connection with clothing?
> [LUKE BAUER] We would use either receipts of sale, like handwritten receipts of sale, or postage mailings.
> Q [ ] And what do you mean by "postage mailings"?
> A Like something that had been sent, if it had a receipt for it, use that as the first date.
> Q Meaning a receipt for the purchase of stamps?
> A Shipping products, yeah.
> Q Now, are we talking about shipping labels that would show that Bauer Bros. sent the package to somebody on such and such date?
> A Yes.
> Q And when you refer to a receipt for postage, do you mean the receipt for purchasing stamps?
> A Yes.
> Q Nothing more than that?
> A That works for us. We would sell stuff, then package it and ship it.

(Luke Bauer Depo. 276:14-277:15; ECF No. 134-12 at 2-3).  Luke Bauer states that "Bauer shipped many goods bearing its 'DON'T TREAD ON ME' and 'DTOM' trademarks by United States mail."  (Luke Bauer Decl. at ¶ 9; ECF No. 132).  Luke Bauer cannot specifically recall buying postage to mail "Don't Tread on Me" products.  (Luke Bauer Depo. 278:11-14; ECF No. 134-12 at 4).

Regarding tax returns and the sale of "Don't Tread On Me" products, Bauer submitted the deposition testimony of Luke Bauer, who states:

> Q: And 2004 was the first year that you filed a tax return that would have covered any sales that you made of Don't Tread on Me apparel; is that right?
> A: To the best of my knowledge.

(Luke Bauer Depo. 287: 21-288:2; ECF No. 134-12 at 5-6).  Luke Bauer states that Bauer had

1  other lines of clothing in 2004, in addition to the "Don't Tread on Me" clothing line.  (Luke

2  Bauer Depo. 288:3-11; ECF No. 134-12 at 6).

3       When asked during his deposition, "Do you recall when you first used 'Don't Tread on

4  Me'?" Luke Bauer responded, "I don't remember the exact date, no."  (Luke Bauer Depo.

5  275:19-276:2; ECF No. 111-3 at 139-40).  When asked during his deposition, "What's the

6  earliest invoice you have on record for the sale of Don't Tread on Me apparel?" and "What's

7  the earliest invoice you have on record for the sale of DTOM apparel?" Tim Bauer responded,

8  "I don't know." (Tim Bauer Depo. 193:4-9; ECF No. 111-3 at 184).

9                                    **DISCUSSION**

10      "A party may move for summary judgment, identifying each claim or defense-or the

11  part of each claim or defense-on which summary judgment is sought.  The court shall grant

12  summary judgment if the movant shows that there is no genuine dispute as to any material fact

13  and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material

14  fact is one that is relevant to an element of a claim or defense and whose existence might affect

15  the outcome of the suit.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S.

16  574, 586 (1986).  The materiality of a fact is determined by the substantive law governing the

17  claim or defense.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986); *Celotex*

18  *Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

19      The moving party has the initial burden of demonstrating that summary judgment is

20  proper.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  The burden then shifts

21  to the opposing party to provide admissible evidence beyond the pleadings to show that

22  summary judgment is not appropriate.  *See Celotex*, 477 U.S. at 322, 324.  The opposing

23  party's evidence is to be believed, and all justifiable inferences are to be drawn in their favor.

24  *See Anderson*, 477 U.S. at 256.  To avoid summary judgment, the opposing party cannot rest

25  solely on conclusory allegations of fact or law.  *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th

26  Cir. 1986).  Instead, the nonmovant must designate which specific facts show that there is a

27  genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

28

1    The nonmoving party's declaration or sworn testimony "is to be accepted as true...."
2   *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  However, "[i]f the affidavit stated
3   only conclusions, and not 'such facts as would be admissible in evidence,' then it would be too
4   conclusory to be cognizable...."  *U.S. v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999)
5   *citing* Fed.R.Civ.P. 56(e).  "[S]elf-serving affidavits are cognizable to establish a genuine issue
6   of material fact so long as they state facts based on personal knowledge and are not too
7   conclusory." *Rodriguez v. Airborne Express,* 265 F.3d 890, 902 (9th Cir. 2001).  "[C]onclusory
8   or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary
9   judgment."  *Anheuser-Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337, 345 (9th
10  Cir.1995).

11                      **Nike's Motion for Summary Judgment**

12       Nike moves for judgment in its favor on Bauer's claims for unfair competition and
13  trademark infringement.   Nike contends that the "Don't Tread On Me" and "DTOM"
14  trademarks are invalid because Bauer cannot prove use of the trademarks in commerce prior
15  to the trademark application filing date or prior to use of the marks by Nike.  Nike contends
16  that priority of use must be proven for the trademarks to be valid and for Bauer to establish
17  protectable rights in the marks.

18       Bauer contends that the federal trademark registrations provide a presumption of
19  validity that Nike fails to rebut.  Bauer contends that the sales receipt for stamps and deposition
20  testimony regarding tax returns prove that Bauer was using the trademarks in commerce prior
21  to Nike and prior to the respective application filing dates.  (ECF No. 131 at 17-21).

22       To establish a trademark infringement claim or an unfair competition claim under the
23  Lanham Act, the plaintiff must establish that the defendant is using a mark confusingly similar
24  to a valid, protectable trademark of the plaintiff.  15 U.S.C.A. §§ 1114(1), 1125(a); Lanham
25  Trade-Mark Act, §§ 32(1), 43(a); *Brookfield Communications, Inc. v. West Coast*
26  *Entertainment Corp*., 174 F.3d 1036, 1046 (9th Cir. 1999).  "A necessary concomitant to
27  proving infringement is, of course, having a valid trademark.... Validity, then, is a threshold
28  issue." *Tie Tech, Inc. v. Kinedyne Corp*., 296 F.3d 778, 783 (9th Cir. 2002).

"It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark, it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Intern., Ltd*., 96 F.3d 1217, 1219 (9th Cir. 1996); see also *Chance v. Pac-Tel Teletrac Inc.,* 242 F.3d 1151 (9th Cir. 2001) ("because token use is not enough, mere adoption of a mark without bona fide use, in an attempt to reserve it for the future, does not create trademark rights.... ownership of a mark requires both appropriation and use in trade; and ownership of a mark and the exclusive right to a mark belongs to the one who first uses the mark on goods placed on the market.").

In an application for use of trademark, the applicant must include a verified statement specifying that "the mark is in use in commerce" at the time of the application. 15 USC § 1051(a)(3)(C).  "Use in commerce" means "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 USC § 1127.  A mark on goods is "in use in commerce" when "(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto... and (B) the goods are sold or transported in commerce...." *Id.*; *see also Chance*, 242 F.3d at 1159 ("the 'use in commerce' requirement includes (1) an element of actual use, and (2) an element of display.")

"A misstatement of the date of first use in the application is not fatal to the securing of a valid registration as long as there has been valid use of the mark prior to the filing date." *Car Subx Serv. Sys., Inc. v. Exxon Corp*., 215 U.S.P.Q. 345, 351 (Trademark Tr. & App. Bd. 1982); *see also Pony Exp. Courier Corp. of America v. Pony Exp. Delivery Serv*., 872 F.2d 317, 319 (9th Cir. 1989) ("The claim of a date of first use is not a material allegation [in application for trademark registration] as long as the first use in fact preceded the application date.").  Failure to meet the prior use requirement renders the mark void *ab initio*, or from the beginning. *Aycock Engineering, Inc. v. Airflite, Inc.,* 560 F.3d 1350, 1357 (Fed. Cir. 2009), *citing Gay Toys, Inc. v. McDonald's Corp*., 585 F.2d 1067, 1068 (Cust. & Pat.App., 1978); Black's Law Dictionary (9th ed. 2009).  "[H]olding an application to be void is an appropriate remedy when the pleaded ground ... [is] that the applicant has not used the applied-for mark on any of the goods or services identified in the application prior to the filing of the application." *Grand*

1  *Canyon West Ranch, LLC v. Hualapai Tribe*, 78 U.S.P.Q.2d 1696, 1697 (Trademark Tr. &

2  App. Bd. 2006).

3      When an applicant fails to produce any documentary evidence of bona fide use of the

4  mark, summary judgment is appropriate. *See Carlsbad v. Shah*, 666 F.Supp.2d 1159 (S.D.Cal.

5  2009) (granting summary judgment for trademark opponent because there was no documentary

6  evidence of applicant's intent to use the trademark at the time of intent-based application);

7  *Conversive, Inc. v. Conversagent, Inc*., 433 F.Supp.2d 1079, 1090 (C.D.Cal. 2006) ("Because

8  of the absence of evidence that the mark was used in commerce, defendant has failed to offer

9  evidence that establishes ... any trademark rights [in the mark].")

10      The plaintiff in a trademark-infringement action bears the ultimate burden of proof that

11  their trademark is valid, either through a valid federal registration or priority of use. *Yellow*

12  *Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005);

13  *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010).

14  "[F]ederal registration provides 'prima facie evidence' of the mark's validity and entitles the

15  plaintiff to a 'strong presumption' that the mark is a protectable mark." *Zobmondo,* 602 F.3d

16  at 1113, *citing* 15 U.S.C. §§ 1057(b), 1115(a); *KP Permanent Make-Up, Inc. v. Lasting*

17  *Impression I, Inc*., 408 F.3d 596, 604 (9th Cir. 2005).  However, "assuming the defendant can

18  demonstrate through law, undisputed facts, or a combination thereof that the mark is invalid,

19  the evidentiary bubble bursts and the plaintiff cannot survive summary judgment." *Tie Tech*,

20  296 F.3d at 783.

21      In this case, Bauer holds federal trademark registrations for "Don't Tread On Me" and

22  "DTOM" that provide a presumption of validity as to both marks. *See Zobmondo,* 602 F.3d

23  at 1113.  The  "Don't Tread On Me" trademark application was filed on April 9, 2004, and

24  the "DTOM" trademark application was filed on January 17, 2006.  The marks are entitled to

25  a presumptive date of first use by those dates. *See Brookfield*, 174 F.3d at 1051, *citing Rolley,*

26  *Inc. v. Younghusband*, 204 F.2d 209, 211 (9th Cir. 1953) (applicant is entitled to a presumptive

27  first-use date of the application filing date for the purposes of determining priority of use when

28  a trademark is federally registered).

1   The burden shifts to Nike to show by a preponderance of evidence that the trademarks

2   are invalid.  *See  Zobmondo*, 602 F.3d at 1114, *citing Tie Tech*, 296 F.3d at 783 ("If the

3   plaintiff establishes that a mark has been properly registered, the burden shifts to the defendant

4   to show by a preponderance of the evidence that the mark is not protectable.").  Nike must

5   demonstrate "through law, undisputed facts, or a combination thereof," *Tie Tech*, 296 F.3d at

6   783,  "that the registrant had not established valid ownership rights in the mark at the time of

7   registration." *Sengoku Works*, 96 F.3d at 1220; *see also Quiksilver, Inc. v. Kymsta Corp*.,  466

8   F.3d 749, 756 (9th Cir. 2006).

9   Nike submits sales records and internal emails to prove that Nike sold apparel in

10  commerce bearing the phrase "Don't Tread on Me" in December 2005 and "DTOM" in March

11  2006 as proof of first use.  Nike submits detailed marketing and development materials

12  culminating in the sale of the marked apparel, along with samples of the goods sold.  This

13  evidence demonstrates that Nike first used the phrase  "Don't Tread On Me" and "DTOM" on

14  goods in commerce as early as December 2005 and March 2006, respectively.  Nike submits

15  evidence of an investigation conducted by a private consultant in 2005 showing that Bauer had

16  not been using the trademarks on any goods in commerce as of late 2005.

17  Luke Bauer admits that he never used the trademarks on all of the items of apparel listed

18  in the trademark applications.  Luke Bauer only claims that he used the trademarks on t-shirts.

19  Bauer produced tax returns and the sales receipt for a purchase of stamps, along with

20  deposition testimony and declaration statements regarding those items, to show first use of the

21  trademarks in commerce in 2004.  Bauer's tax returns state the company's profits but do not

22  show the use or sale of trademarked t-shirts at any time.  Evidence that Bauer, a company with

23  several clothing lines, had profits in 2004 is not evidence that Bauer was using the mark of

24  "Don't Tread On Me" or "DTOM" on t-shirts in commerce.  The sales receipt for a purchase

25  of stamps evidences the purchase of stamps.  The purchase of stamps does not evidence the use

26  or sale of a particular trademarked product at any given time.  The testimony of Luke Bauer

27  that "to the best of my knowledge" Bauer's 2004 tax returns would have covered any sales of

28  "Don't Tread On Me" apparel is conclusory and does not provide "cognizable and significantly

probative evidence" of production of marked apparel or sale of that apparel prior to April 2004.

1  *Shumway*, 199 F.3d at 1104.  (Luke Bauer Depo. 287: 21-288:2; ECF No. 134-12 at 5-6).

2      Bauer has not produced any evidence of bone fide use of the marks or sale of the marks

3  in commerce either at the time Bauer filed the respective applications or at any time before

4  Nike's first use.  The evidence shows that Nike, not Bauer, was the first to use the "Don't

5  Tread On Me" and "DTOM" trademarks in commerce.  The evidence presented by Nike rebuts

6  the presumption of validity established by the federal registration of the trademarks.  Bauer has

7  failed its ultimate burden of proving trademark validity and has failed to show priority of use.

8  The Court concludes that the trademark registrations held by Bauer for "Don't Tread On Me"

9  and "DTOM" are void *ab initio* and cannot be used as the basis for a federal unfair competition

10 or trademark infringement claim against Nike.

11      Nike's motion for summary judgment is granted on the grounds of trademark validity

12 for Bauer's first cause of action alleging unfair competition under the federal Lanham Act.

13 Nike's motion for summary judgment is granted as to Bauer's second cause of action alleging

14 a violation of California Business and Professions Code § 17200 and third cause of action for

15 common law trademark infringement.  "This Circuit has consistently held that state common

16 law claims of unfair competition and actions pursuant to California Business and Professions

17 Code § 17200 are 'substantially congruent' to claims made under the Lanham Act," *Cleary*

18 *v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (affirming district court's dismissal of

19 state claims after finding that dismissal of Lanham Act claims was appropriate).

20      **Bauer's Motion for Summary Judgment on Nike's Affirmative**

21      **Defenses and Motion to Amend Trademark Registrations**

22      The Motion for Summary Judgment on Nike's Affirmative Defenses (ECF No. 113) and

23 the Motion to Amend Trademark Registrations (ECF No. 107) filed by Bauer are DENIED as

24 moot based on the finding that Bauer's trademarks are invalid and that summary judgment in

25 favor of Nike is appropriate.

26      **Bauer's Motion for Summary Judgment on Nike's Counterclaims**

27      Bauer contends that "Nike will not be able to establish the element of its [fraud] claim

28 that Bauer knew or believed that its listing of goods to the PTO was false, or that it was made

with a 'willful intent to deceive' the PTO."  (ECF No. 112-1 at 3).  Bauer asserts that "Bauer's

- 12 -                          09cv500-WQH-BGS

inclusion of items on which it was not using its trademarks was a mistake due to a layperson's misunderstanding of the trademark laws." *Id.* Bauer asserts that "[a]ll of the information in Bauer's applications was true to the best of Mr. Bauer's understanding, and Mr. Bauer did not intend to deceive the PTO...." (ECF No. 140 at 3-4).

Nike contends that Bauer made "two distinct fraudulent statements [when Bauer applied for the subject trademarks]… 1) that Bauer used the phrase 'Don't Tread on Me' [and 'DTOM'] on 114 items of apparel, when the evidence shows that Bauer never used the mark on anything other than t-shirts; and 2) that Bauer was using the mark[s] in commerce as of March 11 or April 9, 2004 (a predicate to its registration), when Bauer has no credible evidence to support that claim." (ECF No. 127 at 9, 12). Nike alleges that Bauer's statement of use as to the itemized goods and date of first use "was a false misrepresentation of material fact [that] constitutes fraud" on the USPTO and that "Bauer made all of the foregoing misrepresentations with the intent to deceive the USPTO so that it would rely on the misrepresentations and grant registration of the… mark[s] to Bauer." (ECF No. 43 at 4, 7).

To cancel a trademark registration for fraud on the USPTO, the party seeking cancellation must establish the following elements: "a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Robi v. Five Platters, Inc.,* 918 F.2d 1439, 1444 (9th Cir. 1990). Regarding intent to induce reliance upon the false representation, "such intent can be inferred from indirect and circumstantial evidence." *In re Bose Corp.,* 580 F.3d 1240, 1245 (Fed. Cir. 2009). "The appropriate inquiry is… not into the registrant's subjective intent, but rather into the objective manifestations of that intent." *Id.* at 1244. However, "[t]here is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." *Id.* at 1246. Damage may be shown by showing a defendant is "required to expend substantial sums to defend itself against [plaintiff's] claim for trademark infringement." *Tokidoki, LLC v. Fortune Dynamic, Inc.*, 2009 WL 2366439 at *12 (C.D.Cal. 2009).

"Because a charge of fraud in the procurement of a trademark registration is a disfavored defense, the party alleging fraud bears a 'heavy' burden of proof." *eCash Techs., Inc. v. Guagliardo,* 210 F. Supp. 2d 1138, 1149 (C.D. Cal. 2000) *citing Robi,* 918 F.2d at 1444. "[T]he very nature of the charge of fraud requires that it be proven to the hilt with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Bose,* 580 F.3d at 1243.   "[A]s a general rule, the factual question of intent is particularly unsuited to disposition on summary judgment." *City of Carlsbad v. Shah,* 666 F.Supp.2d 1159, 1164 (S.D.Cal. 2009) *quoting Commodore Electronics Ltd. v. CBM Kabushiki Kaisha,* 26 U.S.P.G.2d 1502, 1508 (T.T.A.B.1993).

Deposition testimony by Luke Bauer shows that the trademark applications contained false representations of material fact regarding the specific goods being used by Bauer in commerce at the time of both trademark applications.  Luke Bauer knew at the time he filed the applications that Bauer was not using the mark in commerce on all of the listed items, yet Luke Bauer filed the applications including a statement of verification as to the statements contained therein.  ("Q: And you came up with the description of goods that's shown on the second page, right? A: Yes.... Q: You were not in fact using Don't Tread On Me at the time you filed this on a number of these items. Is that fair to say? A: Yes." Luke Bauer Depo. 258:4-14; ECF No. 111-3 at 134).  Nike has provided evidence that Luke Bauer intended for the USPTO to rely on his false representations in the application in order to obtain broader protection.  ("[T]hey're all something that I valued and something that I wanted to pursue.... I thought that I should list all the apparel for better protection." Luke Bauer Depo. 253:20-21; 254:17-22).  Nike has shown that Bauer waited years to amend its "Don't Tread On Me" registration to accurately reflect its use of the mark in commerce and that, to date, Bauer has failed to voluntarily amend its "DTOM" registration.  This evidence suggests an intent by Bauer for the USPTO to rely on the false representations in the registrations to obtain improperly broad trademark protection.  The USPTO relied on the veracity of Luke Bauer's verified statements in the trademark application in granting both trademarks.  Nike has shown damages in defending itself against Bauer's claims for trademark infringement on marks the

1  Court has found to be invalid.

2      The Court concludes that Nike has shown sufficient evidence to support an inference

3  that Bauer committed fraud on the USPTO in obtaining federal registrations for the trademarks

4  for "Don't Tread On Me" and "DTOM."   Accordingly, summary judgment on Nike's

5  counterclaims for fraud on the USPTO is not appropriate.

6                                    **CONCLUSION**

7      IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendant

8  Nike, Inc. (ECF No. 109) is GRANTED.  The Motion for Summary Judgment on Nike's

9  Affirmative Defenses (ECF No. 113) and the Motion to Amend Trademark Registrations (ECF

10 No. 107) filed by Plaintiff Bauer Bros. LLC are DENIED as moot.  The Motion for Summary

11 Judgment on Nike's Counterclaims filed by Plaintiff Bauer Bros. LLC (ECF No. 112) is

12 DENIED.

13 DATED:  May 24, 2012

14                        *William Q. Hayes*

15                        **WILLIAM Q. HAYES**
                          United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28