1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

BAUER BROS., LLC, a California
limited liability company,

11

Plaintiff,

12

v.

13

NIKE, INC., an Oregon corporation,

14

Defendant.

CASE NO. 09cv500-WQH-BGS

ORDER

HAYES, Judge:

15
16

The matters before the Court are: (1) the renewed motion for summary judgment

17

(ECF No. 245) filed by Defendant Nike, Inc. ("Nike"); (2) the motion for summary

18

judgment on Nike's counterclaims (ECF No. 246) filed by Plaintiff Bauer Bros., LLC

19

("Bauer); and (3) the motion to voluntarily amend trademark registrations (ECF No.

20

247) filed by Bauer.

**I.     BACKGROUND**

21

On March 12, 2009, Bauer initiated this action by filing a Complaint against

22

Nike.  (ECF No. 1).  Bauer alleges that it is the owner of registered trademarks for

23

"Don't Tread on Me" and "DTOM" on apparel.  Bauer alleges that Nike sold apparel

24

bearing these trademarks without Bauer's authorization.  In the Complaint, Bauer

25

asserts three causes of action against Nike: (1) unfair competition pursuant to the

26

Lanham Act (15 U.S.C. § 1125); (2) unfair competition pursuant to California law (Cal.

27

Bus. & Prof. Code § 17200); and (3) common law trademark infringement.

28

On April 3, 2009, Nike filed an Answer and Counterclaims.  (ECF No. 4).  On

October 8, 2010, Nike filed Amended Counterclaims seeking cancellation of the "Don't Tread on Me" and "DTOM" trademarks pursuant to 15 U.S.C. §§ 1064 and 1119. Nike alleges that Bauer's trademark registrations were obtained from the U.S. Patent and Trademark Office ("USPTO") through fraud. (ECF No. 43). On September 14, 2011, Bauer filed a Motion to Voluntarily Amend Trademark Registrations, requesting that the Court issue an Order to amend the description of goods in the "Don't Tread on Me" and "DTOM" trademark registrations. (ECF NO. 107). On October 11, 2011, Nike filed a response. (ECF No. 126).

On September 16, 2011, Nike filed a Motion for Summary Judgment. (ECF No. 109). Nike contended that "Don't Tread On Me" and "DTOM" trademarks are invalid because Bauer cannot prove use of the trademarks in commerce prior to the trademark application filing date or prior to use of the marks by Nike. Nike contended that it was entitled to summary judgment on its affirmative defense of fair use and that there was no likelihood of confusion among consumers. Nike requested that the Court grant summary adjudication as to Bauer's lack of actual damages resulting from the alleged trademark infringement. On October 11, 2011, Bauer filed an opposition (ECF No. 131), including the declarations of Luke Bauer (ECF No. 132) and Darren Quinn (ECF Nos. 133-134). Bauer contended that the federal trademark registrations provide a presumption of validity that Nike fails to rebut and that sales receipts for stamps and deposition testimony regarding tax returns prove that Bauer was using the trademarks in commerce prior to Nike and prior to the respective application filing dates. (ECF No. 131 at 17-21). On October 19, 2011, Nike filed a reply (ECF No. 146), and objections to the declarations submitted by Bauer (ECF Nos 141, 142). On March 16, 2012, Nike filed supplemental briefing in support of its motion. (ECF No. 169). On March 23, 2012, Bauer filed a response. (ECF No. 172).

On September 16, 2011, Bauer filed a Motion for Summary Judgment on Nike's Counterclaims (ECF No. 112) and a Motion for Summary Judgment as to Certain Affirmative Defenses (ECF No. 113), including the declarations of Luke Bauer (ECF

No. 114) and Darren Quinn (ECF Nos. 115-116). Bauer contended that it was entitled to summary judgment on Nike's counterclaim for cancellation of Bauer's trademark registrations due to fraud upon the USPTO. On October 11, 2011, Nike filed oppositions (ECF Nos. 127, 128) and objections (ECF Nos 129, 130). On October 18, 2011, Bauer filed replies. (ECF Nos. 139, 140). On March 16, 2012, Bauer filed supplemental briefing in support of its motions. (ECF Nos. 167, 168). On March 23, 2012, Nike filed a response. (ECF No. 171).

On May 24, 2012, the Court issued an Order granting Defendant Nike's motion for summary judgment. (ECF No. 180). The Court concluded that the evidence presented by Nike rebutted the presumption of validity of Bauer's trademarks established by federal registration. *Id.* at 12. The Court concluded that "[t]he evidence shows that Nike, not Bauer, was the first to use the 'Don't Tread on Me' and 'DTOM' trademarks in commerce." *Id.* The Court limited its analysis to the issue of priority of use of the trademark and did not discuss Nike's claims for summary judgment based on fair use or likelihood of confusion. Because the Court granted Nike's motion for summary judgment for Bauer's first cause of action alleging unfair competition under the Lanham Act, the Court also granted Nike's motion as to Bauer's second cause of action alleging a violation of California Business and Professions Code § 17200 and third cause of action for common law trademark infringement. *Id.* at 12 (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)) ("This Circuit has consistently held that the state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act.).

Denying Bauer's motion for summary judgment on Nike's counterclaims, the Court concluded that "Nike has shown sufficient evidence to support an inference that Bauer committed fraud on the USPTO in obtaining federal registrations for the trademarks for "Don't Tread On Me" and "DTOM." *Id.* at 15.

The Order stated that

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendant Nike, Inc. (ECF No. 109) is GRANTED. The Motion for Summary Judgment on Nike's Affirmative Defenses (ECF NO. 113) and the Motion to Amend Trademark Registrations (ECF No. 107) filed by Plaintiff Bauer Bros. LLC are DENIED as moot. The Motion for Summary Judgment on Nike's Counterclaims filed by Plaintiff Bauer Bros. LLC (ECF No. 112) is DENIED.

(ECF No. 180 at 15).

On March 17, 2015, the Ninth Circuit Court of Appeals issued an Order affirming in part and reversing in part the Court's May 24, 2012 Order. (ECF No. 232). The Court of Appeals found that "the district court erred in granting summary judgment to Nike on the issue of priority of use." *Id.* at 3. The Court of Appeals stated that "we reverse the district court's grant of summary judgment in favor of Nike on the issue of priority of use and remand for proceedings consistent with this memorandum." *Id.* at 4. The Court of Appeals further stated that "the district court is free on remand to revisit its ruling excluding evidence and the parties' other summary judgment motions that it previously denied as moot." *Id.*

On August 31, 2015, Nike filed a supplemental motion for summary judgment (ECF No. 245). Nike contends that summary judgment is warranted on the grounds not decided in the Court's prior order—Nike's fair use of Bauer's registered trademarks, no likelihood of consumer confusion, and inability to prove actual damages. On September 14, 2015, Bauer filed an opposition. (ECF No. 248). On September 21, 2015, Nike filed a reply. (ECF No. 251). On September 21, 2015, Nike filed renewed evidentiary objections to the declarations of Darren Quinn and Luke Bauer in opposition to Nike's Motion for Summary Judgment and objections to expert reports of Lori Kozan and Louis Rea. (ECF No. 252).

On August 31, 2015, Bauer filed a motion for summary judgment as to Nike's affirmative defenses of laches, unclean hands, plaintiff lacking trademark rights, fair use, agreement, and failure to mitigate. (ECF No. 246). On September 14, 2015, Nike filed an opposition. (ECF No. 250). On September 21, 2015, Bauer filed a reply. (ECF

No. 253).

On August 31, 2015, Bauer filed a motion to voluntarily amend trademark registrations. (ECF No. 247). On September 14, 2015, Nike filed an opposition. (ECF No. 249). On September 21, 2015, Bauer filed a reply. (ECF No. 254).

## II.   FACTS

The motto "Don't Tread On Me" was adopted by American Revolutionaries and was incorporated, with the image of a rattlesnake, into American military flags in as early as 1776. (ECF No. 176: Peterson Decl., Ex. 25: Expert Report of James P. Rife at 5-9). The United States military has continued to use the motto on flags and posters and on patches affixed to military uniforms. *Id.* at 14-19. The motto has been used in literature, songs, and on television. *Id.* at 19-23. The motto continues to be used today in connection with modern political movements such as the Tea Party and the National Rifle Association. *Id.* at 24, 34.

Bauer Bros. LLC ("Bauer") is a clothing company run by Tim Bauer and Luke Bauer. On April 9, 2004, Bauer filed a trademark application for use of the phrase "Don't Tread On Me." (ECF No. 246-33; Trademark App. No. 78,399,375). The application stated a "first use in commerce date" of March 11, 2004 for over a hundred items of apparel, including shirts, ski bibs, suspenders, camisoles, leotards, and galoshes. *Id.* On June 7, 2005, the United States Patent and Trademark Office ("USPTO") registered the trademark "Don't Tread On Me" to Bauer. (ECF No. 246-34; Trademark Reg. No. 2,959,755).

In 2005, Nike decided to use the motto "Don't Tread on Me" in a campaign to support for the United States Men's National Soccer Team ("USMNT"), which Nike sponsors. (ECF No. 176: Peterson Decl. Ex. 21). The design for the USMNT campaign contained a graphic of a rattlesnake wrapped around a soccer ball. (ECF No. 176: Thurman Decl., ¶ 4, Ex. 2). The graphic was sometimes accompanied by a ribbon with the motto "Don't Tread On Me." *Id.* Nike launched the campaign by unveiling an oversized stadium flag bearing this design at the October 12, 2005 USMNT qualifying

- 5 -                                    Case No. 09cv500-WQH-BGS

match against Panama, and continued the campaign for a number of years. (ECF No. 176: Peterson Decl., Ex. 29). Nike's campaign for the USMNT included, at various times, promotional products bearing "Don't Tread on Me" or "Don't Tread on the Red" that were distributed to fans at games and were available to consumers in limited retail channels at various times. (ECF No. 176: Henderson Decl., ¶ 9; Thurman Decl., ¶ 5; Peterson Decl., Exs. 29, 32; Davis Decl., Appendix A).

On January 17, 2006, Bauer filed a trademark application for the phrase "DTOM" (an abbreviation of "Don't Tread On Me"). (ECF No. 246-35; Trademark App. No. 78, 792,628). The application stated a "first use in commerce date" of March 11, 2004 for over a hundred items of apparel, identical to the items of apparel listed in the "Don't Tread On Me" application. *Id.* Luke Bauer signed the application, on behalf of Bauer, declaring "that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true." *Id.* On November 14, 2006, the USPTO registered the trademark for "DTOM" to Bauer. (ECF No. 246-36; Trademark Reg. No. 3,171,585). At the time Bauer filed the trademark application for "DTOM," a number of the items of apparel listed in the application were not being used by Bauer in commerce. (ECF No. 127-6 at 185-86; Luke Bauer Depo. 280:20-281:4).

In March and May 2006, Nike released two products that featured the snake and soccer ball graphic in a crest format without the words "Don't Tread on Me." (ECF No. 176-12, Davis Decl., Appendix A, 2-4). These products incorporated a fold-over woven label at the bottom of the garment that displayed the snake graphic and the letters "D.T.O.M." on one side and "United States National Team" on the other side. *Id.* Also in March 2006, Nike released a small run of t-shirts displaying the snake graphic and "D.T.O.M." on the front, with the same fold-over label on the hem. *Id.* at 3. Nike later sold various other products that incorporated the "Don't Tread on Me" motto or the letters "DTOM," all of which contained and/or affixed Nike's registered trademarks. *Id.* at 3.

Nike submitted the deposition testimony and expert report of a trademark consultant who investigated Bauer's use of the "Don't Tread on Me" trademark in early November 2005. (ECF No. 176-3: Kelly Depo.). The consultant stated that he conducted research and communicated directly with Tim and Luke Bauer between November 2005 and January 2006 regarding Bauer's use of the "Don't Tread On Me" trademark. *Id.* at 48:5-50:1; 54:17-20. The consultant concluded that Bauer was not using the "Don't Tread On Me" trademark in commerce at that time. *Id.* Nike asked its consultant to offer to purchase the "Don't Tread on Me" registration. *Id.* at 39:11-20. Bauer rejected Nike's offer. *Id.* at 60:10-16.

Nike submitted itemized sales records which show that the first sale of Nike apparel bearing the phrase "Don't Tread on Me" occurred in December 2005 and that the first sale of Nike apparel bearing the phrase "DTOM" occurred in March 2006. (ECF No. 144 at 6-8). Nike submitted the deposition testimony of Nike's advertising manager who states that he began working on Nike's "Don't Tread on Me" advertising campaign for the U.S. Men's National Soccer Team in May 2005, and that the campaign was launched to the public in October 2005. (ECF No. 111-2 at 12). Nike submitted internal communications dated August and December 2005 specifically regarding the campaign and referencing existing sale orders and anticipated retail locations for the sale of "Don't Tread on Me" t-shirts and apparel. (ECF No. 111-4 at 70-71, 111-6 at 8).

In a declaration dated September 16, 2011, Luke Bauer stated that "[o]n April 9, 2004, on which date I filed Bauer's trademark application for 'DON'T TREAD ON ME,' Bauer was only using its 'DON'T TREAD ON ME' trademark on t-shirts... [and o]n January 17, 2006, on which date I filed Bauer's trademark application for 'DTOM,' Bauer was only using its 'DTOM' trademark on t-shirts." (ECF No. 246-32 at 3; Luke Bauer Decl. ¶¶ 17-18). Luke Bauer stated that, "[a]t the time I submitted the Applications, I did not know that the Applications contained any statement that was false or that the PTO would interpret to be false. . . . I did not intend to deceive the PTO

in any way. . . [and] I did not make any knowing misrepresentation to the PTO in connection with the Applications." ( ECF No. 246-32 at 5; Luke Bauer Decl. ¶¶ 27-28, 30).

### III.   DISCUSSION

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The materiality of a fact is determined by the substantive law governing the claim or defense.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate.  *See Celotex*, 477 U.S. at 322, 324.  The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in their favor.  *See Anderson*, 477 U.S. at 256.  To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law.  *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).  Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

The nonmoving party's declaration or sworn testimony "is to be accepted as true…." *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  However, "[i]f the affidavit stated only conclusions, and not 'such facts as would be admissible in evidence,' then it would be too conclusory to be cognizable…." *U.S. v. Shumway*, 199

1 F.3d 1093, 1103-04 (9th Cir. 1999) *citing* Fed.R.Civ.P. 56(e).

2 **A. Nike's Motion for Summary Judgment**

3 **1. Likelihood of Confusion**

4 Nike contends that "even if Bauer could overcome Nike's fair use defense, its

5 claims still fail as a matter of law because, based on the undisputed evidence, no

6 reasonable juror could find a likelihood of confusion between Nike and Bauer's

7 products." (ECF No. 245-1 at 26). Nike contends that there is no likelihood of

8 consumer confusion because:

9 (1) Bauer's marks are conceptually and commercially weak and are thus

10 entitled to little, if any, protection; (2) Bauer's and Nike's goods are dissimiliar; (3) Bauer's and Nike's marketplace uses are dissimiliar; (4) after years of purported concurrent use, no evidence of actual confusion

11 exists; (5) the parties' marketing channels are dissimiliar; (6) Nike's consumers are sophisticated and exercise a high degree of care; (7) Nike

12 acted in good faith in adopting its use of 'Don't Tread On Me' and DTOM; and (8) Bauer had not provided any evidence of an intention to

13 expand any existing product line or into soccer apparel.

14 *Id.* at 27.

15 Bauer contends that "there is, at a minimum, a triable issue as to likelihood of

16 confusion." (ECF No. 248 at 21). Bauer contends that "both Bauer and Nike used

17 Bauer's trademarks on the exact same products—t-shirts." *Id.* Bauer contends that it

18 "produced evidence that some of its customers purchased Bauer's products to wear at

19 World Cup Soccer games." *Id.* Bauer contends that "Bauer's trademarks, 'DON'T

20 TREAD ON ME' and *especially* 'DTOM,' are arbitrary or fanciful when applied to t-

21 shirts. . . . [and] are, therefore, entitled to a high level of protection." *Id.* at 22. Bauer

22 contends that "[t]he marks used by Nike have perfect similarity in sight and sound to

23 Bauer's marks." *Id.* Bauer contends that it "presented evidence of actual reverse

24 confusion and submitted a likelihood of confusion survey by Prof. Lou Rea, Ph.D." *Id.*

25 "The limited purpose of trademark protections set forth in the Lanham Trade-

26 Mark Act, 15 U.S.C. § 1501 et seq., is to avoid confusion in the marketplace by

27 allowing a trademark owner to prevent others from duping consumers into buying a

28 product they mistakenly believe is sponsored by the trademark owner." *Mattel Inc. v.*

*Walking Mountain Productions*, 353 F.3d 792, 806 (9th Cir. 2003) (citations and internal quotation marks omitted).   To determine whether there is a likelihood of confusion between two marks, the Court of Appeals for the Ninth Circuit applies the following factors:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) types of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341*,* 348-49; *see also Fortune Dynamic Inc.*, 618 F.3d, 1025, 1030 (9th Cir. 2010).   "This eight-factor analysis is pliant, illustrative rather than exhaustive, and best understood as simply providing helpful guideposts. . . . Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Fortune Dynamic Inc.*, 618 F.3d at 1030-31 (citations and internal quotation marks omitted).   Courts should consider "what each factor, and—more importantly—what the analysis as a whole, reveals about the ultimate question . . . the likelihood of consumer confusion as to the origin of the product or service bearing the allegedly infringing mark." *Entrepreneur Media, Inc.*, 279 F.3d 1135, 1141 (9th Cir. 2002).

"The ultimate question of likelihood of confusion is predominately factual in nature, as is each factor within the *Sleekcraft* likelihood of confusion test." *Id.* at 1140. "Likelihood of confusion is a factual determination, and district courts should grant summary judgment motions regarding the likelihood of confusion sparingly." *Fortune Dynamic Inc.*, 618 F.3d at 1039. "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Id.* at 1031.

The evidence does not conclusively show that Bauer's marks are commercially strong or conceptually strong because "Don't Tread On Me" is an expression or slogan. The evidence shows that Bauer and Nike both used the marks on t-shirts.  Nike's use of Bauer's registered marks was identical in appearance and sound.  Bauer submitted

a likelihood of confusion survey by Professor Lou Rhea, Ph.D. which concludes that because most survey respondents perceive Nike's use of "Don't Tread on Me" and "DTOM" as branding/trademarks, confusion among consumers is likely. Nike disputes the methodology and reliability of the survey, however, technical unreliability of a survey in a trademark case goes to the weight, not the admissibility, of the evidence. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001). Bauer presents evidence that both Bauer and Nike have sold their products on the internet and at Nordstrom. Nike acknowledges that it was aware of the Bauer "Don't Tread On Me" trademark prior to launching its USMNT campaign, therefore whether Nike used the expression in good faith is a material issue of fact.

After applying the *Sleekcraft* factors to this case the Court concludes that genuine issues of disputed fact remain with regard to a finding of likelihood of consumer confusion. *See Fortune Dynamic Inc.*, 618 F.3d at 1031 ("We are far from certain that consumers were likely to be confused as to the source . . . but we are confident that the question is close enough that it should be answered as a matter of fact by a jury, not as a matter of law by a court.") (quoting *Entrepreneur Media, Inc.*, 279 F.3d at 1140). The summary judgment motion brought by Nike on the issue of likelihood of confusion is denied.

**2. Fair Use**

Nike contends that

> 'Don't Tread On Me' has been used in common parlance for over 200 years. Bauer has no claim to the phrase's common, primary, meaning—its historical message as a famous American rallying cry—and by attempting to protect it under trademark law, it assumed the risk of third parties' using it for its common meaning.

(ECF No. 245-1 at 21). Nike contends that "Nike did not use "Don't Tread on Me" or "DTOM" as a trademark to identify the source of its products . . . nor did it use the term with an intent to confuse consumers or usurp any of Bauer's goodwill." *Id.* Nike contends that its "short-term, limited, expressive use of 'Don't Tread on Me' and DTOM was always accompanied with one or more of its famous marks to identify itself

1   as the source of its products . . . which not only minimizes any confusion, but indicates

2   that Nike used the designs in good faith." *Id.* at 25.

3       Bauer contends that Nike used the marks in areas of Nike's merchandise where

4   consumers would expect to find source identifiers (e.g., hang tags, fold-over labels, the

5   neck area of shirts, and the inside breast of shirts). (ECF No. 248 at 10-11). Bauer

6   contends that Nike's attempt to purchase Bauer's "Don't Tread On Me" trademark and

7   subsequent attempt to register the trademark "Don't Tread On This" is evidence that

8   Nike viewed "Don't Tread On Me" as a trademark and that Nike used the marks in bad

9   faith. *Id.* at 11-12.[1]

10      Fair use is an affirmative defense to trademark infringement. "Under the

11   common law classic fair use defense codified in the Lanham Act at 15 United States

12   Code § 1115(b), 'a junior user is always entitled to use a descriptive term in good faith

13   in its primary, descriptive sense other than as a trademark.'" *Cairns v. Franklin Mint*

14   *Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002). "[T]he classic fair use analysis is appropriate

15   where a defendant has used the plaintiff's mark only to describe his own product, and

16   not at all to describe the plaintiff's product." *Id.* at 1151. "To establish a classic fair use

17   defense, a defendant must prove the following three elements: '1. Defendant's use of

18   the term is not as a trademark or service mark; 2. Defendant uses the term 'fairly and

19   in good faith;' and 3. Defendant uses the term 'only to describe its goods or services.'"

20   *Id.* at 1151 (quoting 15 U.S.C. § 1115(b)). "In our Circuit, the classic fair use defense

21   is not available if there is a likelihood of customer confusion as to the origin of the

22   product." *Id.* "[T]he classic fair use analysis . . . complements the likelihood of

23   customer confusion analysis set forth in *Sleekcraft* . . . ." *Id.* at 1150.

24      The Court has determined that the parties have presented material issues of fact

25

26       [1] Nike contends that "Bauer incorrectly argues that Nike is somehow precluded
from renewing its fair use defense on remand." (ECF No. 245-1 at 25). Bauer contends
27   that "this Court and the Ninth Circuit have found and considered Nike's use of Bauer's
trademarks to be a trademark use." (ECF No. 248 at 8). The Court did not previously
28   rule on Nike's fair use defense and the mandate of the Court of Appeals does not
preclude it from considering a fair use defense now.

regarding likelihood of consumer confusion.  The parties have also presented a factual dispute regarding whether Nike used the terms "Don't Treat on Me" and "DTOM" in good faith.  The motion for summary judgment brought by Nike on the issue of fair use is denied.

### 3. Summary Adjudication as to Bauer's Lack of Actual Damages

Nike contends that Bauer "has conceded that it has no evidence of any harm, lost sales, or lost profits directly attributable to Nike's use of the phrase 'Don't Tread on Me' or its abbreviation DTOM."  (ECF No. 245-1 at 30).

Bauer contends that "triable issues exist as to Bauer's entitlement to recover a reasonable royalty and Nike's advertising expenditures as damages."  (ECF No. 248 at 22).  Bauer contends that it "seeks the disgorgement of Nike's profits on an unjust enrichment theory, not as 'compensatory damages' on a 'reverse confusion' theory." *Id.* at 24.  Bauer contends that there is "at least a triable issue as to whether or not Nike's infringement was willful and entitles Bauer to recover Nike's profits to prevent unjust enrichment." *Id.*

In its reply, Nike contends that Bauer is not entitled to a reasonable royalty as compensatory damages unless Bauer presents evidence that its goodwill and reputation was damaged.  Nike contends that Bauer is not entitled to disgorgement of Nike's profits because Bauer does not have evidence that Nike's alleged infringement was willful.

"Trademark remedies are guided by tort law principles. . . . As a general rule, damages . . . must be established with reasonable certainty." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993).  "Where trademark infringement is deliberate and willful, this court has found that a remedy no greater than an injunction slights the public. . . . This standard applies, however, only in those cases where the infringement is willfully calculated to exploit the advantage of an established mark. The intent of the infringer is relevant evidence on the issue of awarding profits and damages and the amount." *Id.* at 1405 (citations omitted).

"[L]ost royalty payments are a form of damages for lost profits, and like other modes of calculating lost profits, they must be proved with reasonable certainty as to both occurrence and extent." *See Quia Corp. v. Mattel, Inc.*, No. C 10-1902, 2011 WL 2749576, at * 6 (N.D. Cal. Jul. 14, 2011) (citations omitted). "Thus, reasonable royalty analysis most often is applied in a trademark context where the parties had a prior licensing arrangement" or where the plaintiff has previously licensed the mark to a third party. *See id.*; *see also QS Wholesale, Inc. v. World Marketing, Inc.*, No. SA 12-CV-0451, 2013 WL 1953719, at *4 (C.D. Cal. May 9, 2013) ("Where a plaintiff has failed to present evidence of an intent to license its trademark, a reasonable royalty analysis necessarily is speculation."). Some courts, however, have awarded "reasonable royalty damages" absent prior licensing agreements "if the evidence provides a sufficiently reliable basis from which to calculate them." *See QS Wholesale, Inc.*, 2013 WL 1953719, at *4 (the Court could not find that award of royalties was impermissibly speculative as a matter of law where no prior licensing agreement existed between the parties but negotiations between the parties over the defendant's offer to purchase the plaintiff's mark provided "the same reasonable certainty regarding royalties that licensing negotiations would provide in another case.").

Based on the record in this case, the Court cannot conclude that Bauer is not entitled to damages as a matter of law. The motion for summary adjudication as to Bauer's lack of damages filed by Nike is denied.

**B. Bauer's Motion for Summary Judgment on Nike's Defenses**

Bauer seeks summary judgment as to Nike's affirmative defenses of laches, unclean hands, plaintiff lacking trademark rights, fair use, agreement, and failure to mitigate. (ECF No. 246-1).

### 1. Bauer Lacks Trademark Rights

Bauer contends that Nike's third affirmative defense that Bauer lacks trademark rights merely seeks to negate the ownership element of Bauer's trademark infringement claim. *Id.* at 6. Bauer contends that Nike's claims that Bauer was not the first to use

1  "Don't Tread On Me" and "DTOM" in commerce and that there has been widespread

2  third party use of the phrase and its abbreviation fail as a matter of law.  *Id.* at 7.

3       Nike contends that it has "at least raised a genuine issue of fact regarding whether

4  Bauer can carry its burden to demonstrate that it owns valid and protectable trademark

5  rights in the DON'T TREAD ON ME and DTOM marks." (ECF No. 250 at 27).  Nike

6  contends that "there exists a genuine issue of material fact . . . regarding whether

7  consumers view Bauer's use of DON'T TREAD ON ME and DTOM as trademark uses

8  indicating source of the apparel only in Bauer, particularly in light of Bauer's own

9  ornamental use (*see* Davis Decl., Appendix B) and widespread and extensive third-party

10  use (*see* Rife Report at 28-35)."  *Id.*

11       The April 13, 2015 order from the Court of Appeals stated that "Nike presented

12  some evidence calling into question the date of first use in commerce set forth in Bauer

13  Bros.' trademark registration applications." (ECF No. 232 at 3-4).  Nike has presented

14  sufficient evidence to call into question the validity of Bauer's trademark rights to

15  survive Bauer's motion for summary judgment on this defense.  Bauer's motion for

16  summary judgment on Nike's affirmative defense that Bauer lacks trademark rights is

17  denied.

18               **2.  Failure to Mitigate**

19       Bauer contends that Nike's sixth affirmative defense of "failure to use reasonable

20  means to mitigate its purported injury" does not apply to this case because Bauer's

21  damages are dependent on Nike's conduct.  *Id.* at 9. Bauer contends that failure to

22  mitigate damages is not a defense to trademark infringement or unfair competition.  *Id.*

23  at 8.  Bauer contends that it would not be possible for Bauer to mitigate damages on a

24  lost reasonable royalty or on damages presumed from Nike's advertising expenditures.

25  *Id.* at 9.

26       Nike contends that "failure to mitigate damages is not a defense to a claim for

27  trademark infringement . . . [it] is a defense to a claim for damages." (ECF No. 250 at

28  25).  Nike contends that "Bauer has suffered no actual damages as a result of Nike's

allegedly infringing use . . . and Bauer is not entitled to any presumption of actual damages in the form of Nike's advertising expenditures." *Id.* at 27.

The Court has determined that it cannot conclude that Bauer is not entitled to damages as a matter of law. Because damages cannot be determined at this stage of the proceedings, whether Bauer should have mitigated its damages is an issue that cannot be resolved at the summary judgment stage. The motion for summary judgment brought by Bauer on Nike's affirmative defense of failure to mitigate is denied.

### 3. Agreement

Bauer contends that Nike's fifth affirmative defense that Nike's use of Bauer's trademarks was permitted pursuant to an agreement between the parties fails because Nike has not performed a condition precedent to the agreement, Nike induced the agreement by making false statements, and the Court has already denied Nike's motion to enforce the agreement. *Id.* Bauer contends that Nike was obligated under the agreement to provide a declaration that it had not made any profits on its "Don't Tread On Me" and "DTOM" products and that the declaration of profits was not timely and indicated that Nike made a profit. *Id.* at 10.

Nike contends that "there are at least material questions of fact as to whether Nike failed to perform a condition precedent to the purported agreement and induced the agreement. . . ." (ECF No. 250 at 23). Nike contends that "the Court (per Judge Whelan) denied *without prejudice* Nike's Motion to enforce that settlement agreement, but the court specifically stated that it 'perceives why Nike believes their [no profit] declaration was sufficient, and why Bauer Brothers objects to it. But it remains unclear why Bauer Brothers believes it is entitled to anything more given the terms of the settlement." *Id.* at 23-24 (citing ECF No. 32 at 2-3). Nike contends that "there is a significant dispute over Nike's lack of profit that cannot be resolved on Bauer's motion." *Id.* at 24.

The Court concludes that Nike has presented evidence of a material dispute as to whether Nike satisfied the condition precedent to the agreement by providing Bauer

1  with a declaration of profits.  The motion for summary judgment brought by Bauer on

2  Nike's affirmative defense of agreement is denied.

3                    **4.  Unclean Hands**

4      Bauer contends that summary judgment should be granted for Bauer on Nike's

5  second affirmative defense of "unclean hands" because "Bauer did not use its 'DON'T

6  TREAD ON ME' and 'DTOM' trademarks to deceive consumers."  *Id.* at 11.

7      Nike contends that "the record suggests that 'Bauer's trademark applications

8  contained false representations of material fact regarding the specific goods being used

9  by Bauer in commerce at the time of both trademark applications,' and that Bauer

10  intended 'for the USPTO to rely on the false representations in the registrations to

11  obtain improperly broad trademark protection.'"  *Id.* at 23 (citing ECF No. 180 at 14).

12     "The doctrine of unclean hands bars relief to a plaintiff who has violated

13  conscience, good faith or other equitable principles in his prior conduct, as well as to

14  plaintiff who has dirtied his hands in acquiring the right presently asserted."  *Seller*

15  *Agency Counsel, Inc. v. Kennedy Center for Real Estate Educ., Inc.*, 621 F.3d 981, 986

16  (9th Cir. 2010).

17     In its prior Order, this Court concluded that "Nike has shown sufficient evidence

18  to support an inference that Bauer committed fraud on the USPTO in obtaining federal

19  registrations for the trademarks 'Don't Tread On Me' and 'DTOM.'" (ECF No. 180 at

20  15).  The evidence presented by Nike supports an inference that Bauer committed fraud

21  and is sufficient to deny the motion for summary judgment brought by Bauer on Nike's

22  affirmative defense of unclean hands.

23                    **5.  Laches**

24     Bauer contends that summary judgment should be granted for Bauer on Nike's

25  first affirmative defense of laches because the "action was timely filed well within the

26  four (4) year statute of limitations for trademark infringement." (ECF No. 246-1 at 13).

27  Bauer contends that "a "laches" defense cannot be asserted with respect to violations

28  that occurred within the statute of limitations period."  *Id.* at 13.

Nike contends that the applicable statute of limitations for Bauer's Lanham Act claims is two years. (ECF No. 250 at 18). Nike contends that Bauer should have known that Nike was using "Don't Tread On Me" in its USMNT campaign as early as 2005 and Luke Bauer admitted that it knew of Nike's alleged infringing use as early as 2006. *Id.* at 16. Nike contends that Bauer's sending Nike a cease and desist letter in 2008 and filing suit in 2009 was unreasonable delay that exposed Nike to a potentially higher amount of damages. *Id.* at 17, 22.

For a suit to be barred by laches, the defendant must show "that (1) plaintiff's delay in filing suit was unreasonable, and (2) defendant would suffer prejudice caused by the delay if the suit were to continue." *Au-Tomotive Gold Inc. v. Volkswagen of America, Inc.*, 603 F.3d 1133, 1139 (9th Cir. 2010). "Laches is an equitable time limitation on a party's right to bring suit and is a valid defense to Lanham Act claims." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1138 (9th Cir. 2006) (citations and internal quotations omitted). "The limitations period for laches starts when the plaintiff knew or should have known about its potential cause of action." *Internet Specialties West, Inc.*, 559 F.3d at 990 (citations and internal quotations omitted).

"Because the Lanham Act does not have its own statute of limitations, we borrow the most analogous statute of limitations from state law in order to determine whether a plaintiff's delay in filing suit was reasonable." *Au-Tomotive Gold Inc.*, 603 F.3d at 1140. "If a Lanham Act claim is filed within the analogous state statute of limitations period, the strong presumption is that laches is inapplicable; if the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit." *Id.* at 1139-40.

The Court of Appeals has applied the four year statute of limitations period under California Business and Professions Code § 17208 for Lanham Act claims. *Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 990 (9th Cir. 2009); *see also Derek and Constance Lee Corp. v. Kim Seng Co.*, 391 Fed. Appx. 627, 628 n. 1 (9th Cir. 2010) ("We have considered both the three-year limitations period for

fraud as provided in California Civil Procedure Code § 338(d) . . . and the four-year limitations period for California trademark infringement as provided in California Business and Professions Code § 17208 . . . to be analogous limitations periods for Lanham Act claims.).

Even if Bauer had knowledge of Nike's alleged infringing use of "Don't Tread On Me" as early as October 2005 when Nike launched its USMNT campaign, Bauer filed this suit less than four years later, on March 12, 2009. Because Bauer filed suit against Nike action within the analogous four year limitations period after it first received notice of Nike's activities, Bauer's suit is not barred by laches. *See Automotive Gold Inc.*, 603 F.3d at 1140. The motion for summary judgment brought by Bauer on Nike's laches defense is granted.

### 6. Fair Use

Bauer contends that it is entitled to summary judgment on Nike's fourth affirmative defense for fair use. (ECF No. 246-1 at 16). The parties' arguments regarding fair use in Bauer's motion for summary judgment are consistent with the parties' arguments regarding fair use in Nike's motion for summary judgment. The Court has determined that fair use cannot be properly decided at the summary judgment stage of the proceedings. The motion for summary judgment brought by Bauer against Nike's affirmative defense of fair use is denied.

**C. Bauer's Motion to Voluntarily Amend Trademark Registrations**

Bauer requests that the Court order the USPTO to amend the description of the "Goods and Services" on Bauer's trademark registrations to read: "Apparel, namely t-shirts." (ECF No. 247-1 at 2-3). Bauer states that "at the time Bauer filed its applications for "DON'T TREAD ON ME," AND "DTOM," it was only using its trademarks on t-shirts and not all of the subcategories of apparel listed . . . ." *Id.* at 2. Bauer contends that the erroneous description of the goods on the trademark applications was due to "a good faith misunderstanding of the law." *Id.* at 3. Bauer contends that the Court can order an amendment even though there is a pending

1   cancellation claim based on fraud. *Id.*

2       Nike contends that "[w]hile Nike does not dispute that this Court has the ability

3   to direct the USPTO to modify the registrations, doing so will not cure Bauer's fraud."

4   (ECF No. 249 at 2). Nike contends that "while the Court has the power to direct the

5   amendment of the Bauer registrations, those registrations should ultimately be cancelled

6   in light of Bauer's fraud, which would not be cured by an amendment." *Id.* at 4.

7       "Upon application of the registrant and payment of the prescribed fee, the

8   [USPTO] Director for good cause may permit any registration to be amended or to be

9   disclaimed in part: Provided, that the amendment or disclaimer does not alter materially

10   the character of the mark." U.S.C. § 1057(e). A court has the authority to order the

11   USPTO to amend a trademark registration:

12        In any action involving a registered mark the court may determine the
     right to registration, order the cancellation of registrations, in whole or in
13        part, restore canceled registrations, and otherwise rectify the register with
     respect to the registrations of any party to the action. Decrees and orders
14        shall be certified by the court to the Director, who shall make appropriate
     entry upon the records of the Patent and Trademark Office, and shall be
15        controlled thereby.

16   15 U.S.C. § 1119. *See also Philip Morris USA, Inc. v. King Mountain Tobacco Co.,*

17   *Inc.*, 569 F.3d 932, 944 (9th Cir. 2009) ("Under federal law, the courts and the Patent

18   and Trademark Office have concurrent jurisdiction over cancellation proceedings");

19   *One True Vine, LLC v. Wine Group LLC*, No. C 09-1328, 2009 WL 3707512, at *2

20   (N.D. Cal. Nov. 4, 2009).

21       Because of the ongoing litigation between the parties, the Court declines at this

22   time to order the USPTO to amend the Bauer trademark registrations. The motion to

23   voluntarily amend trademark registrations filed by Bauer is denied.

24   **IV.   CONCLUSION**

25       IT IS HEREBY ORDERED that the renewed motion for summary judgment

26   (ECF No. 245) filed by Defendant Nike, Inc. is denied.

27       IT IS FURTHER ORDERED that the motion for summary judgment on Nike's

28   counterclaims (ECF No. 246) filed by Plaintiff Bauer Bros., LLC is granted as to Nike's

laches defense and denied on all other grounds.

IT IS FURTHER ORDERED that the motion to voluntarily amend trademark registrations (ECF No. 247) filed by Bauer is denied.

IT IS FURTHER ORDERED that the parties shall fully comply with the Pretrial Disclosure requirements of Federal Rule of Civil Procedure 26(a)(3) on or before April 4, 2016. Failure to comply with these disclosure requirements could result in evidence preclusion or other sanctions under Federal Rule of Civil Procedure 37.

Counsel shall meet together and take the action required by Local Rule 16.1(f)(4) on or before April 11, 2016. At this meeting, counsel shall discuss and attempt to enter into stipulations and agreements resulting in simplification of the triable issues. Counsel shall exchange copies and/or display all exhibits other than those to be used for impeachment. The exhibits shall be prepared in accordance with Local Rule 16.1(f)(4)(c). Counsel shall note any objections they have to any other parties' Pretrial Disclosures under Federal Rule of Civil Procedure 26(a)(3). Counsel shall cooperate in the preparation of the proposed pretrial conference order.

The proposed final pretrial conference order, including objections to the opposing parties' Federal Rule of Civil Procedure 26(a)(3) Pretrial Disclosures shall be filed with the Clerk of the Court, and e-mailed to efile_hayes@casd.uscourts.gov in WordPerfect or Word format, on or before April 18, 2016, and shall be in the form prescribed in and in compliance with Local Rule 16.1(f)(6).

The final pretrial conference shall be held on May 6, 2016, at 10:00 a.m., in courtroom 14B.

DATED: February 3, 2016

**WILLIAM Q. HAYES**
United States District Judge